## 17035.   EMORY UNIVERSITY *v.* BLISS.

In a suit for damages alleged to have been sustained as a result of the defendant's negligence, where the inference of negligence, if existing, depends entirely upon circumstantial evidence, and where there is direct testimony consistent therewith which shows that the defendant was without negligence and which is not subject to discredit upon any ground, a verdict in the plaintiff's favor is unauthorized. Applying this rule to the evidence in this case, the verdict was contrary to the evidence and to law, and the court erred in refusing the defendant's motion for a new trial, based upon the general grounds only.

DECIDED SEPTEMBER 20, 1926.   REHEARING DENIED OCTOBER 2, 1926.

Damages; from DeKalb superior court—Judge Hutcheson. November 14, 1925.

Application for certiorari was made to the Supreme Court.

*Candler, Thomson & Hirsch,* for plaintiff in error.

*Terrell & Terrell, Branch & Howard,* and *A. R. Dorsey,* contra.

BELL, J. Dr. A. R. Bliss, while employed as professor of pharmacology in Emory University, a corporation, was injured by a gas explosion in the stock-room of his department. He sued the university for damages and recovered. The defendant's motion for a new trial, containing the general grounds only, was overruled, and it excepted. The following is a general description of the surroundings as gleaned from the petition and the undisputed evidence: The plaintiff's injuries were received in the stock-room. This room was situated a few feet from the laboratory room, in which the students made experiments and received instructions. The stock-room and the laboratory room, with a hall or corridor between, were both constructed with two floors, about four inches apart, the upper floor being of wood and the lower of concrete. The upper floor rested upon sills which were laid upon the concrete. In the space between the floors were pipes through which gas was supplied to the laboratory. These pipes extended through small iron boxes set upon the concrete at various places in the laboratory, and in each of these boxes was a pet-cock to control the outlet of gas. The pipes were not airtight in the holes through which they went into the boxes, and it was physically possible for some air to pass from the boxes into the open space between the floors and vice versa, carrying gas if any should be released from the pipes in either place. The holes were 15/16 of an inch in diameter, while the diameter of the pipes was only

11/16 of an inch. Each box had a movable lid, the top of which was flush with the wooden floor. When a student found it necessary to use gas he would remove the lid from the box and connect a rubber tube with the pipe at the cock, then turn on the gas which would be conveyed through the tube to the student's table. The gas was thus supplied to lamps and burned as needed. When the students were "through using the lamps, they were supposed to turn off the gas cock, detach the hose, and put the iron cover back" on the box. The gas was subject to use by the classes in the above-described manner several times weekly. The explosion which caused the plaintiff's injuries was between the double floors, apparently beginning in the laboratory room and extending into the stock-room. The plaintiff alleged, and sought to prove, that, as a result of a defect or defects in the pipes, gas escaped and accumulated between the floors and in some way became ignited, and that the defendant was negligent in failing to maintain the pipes in a proper condition and in failing to inspect the same and to warn the plaintiff of the defective condition. The plaintiff testified that "at the time the explosion took place that morning, the students, under [his] instructions, had opened these iron plates [or boxes], put the gas tubes on, and connected them up to the burners and were actually engaged in lighting up lamps. They lit these lamps by striking a match." The plaintiff, however, undertook to exclude the theory that the explosion resulted from any negligence on the part of the students. This involved proof to the effect that there was no gas in any of the iron boxes containing the pet-cocks at the time of the occurrence, but that the explosion was from gas confined somewhere else between the floors. The plaintiff's proof of negligence depended entirely upon circumstantial evidence, including an application of the maxim res ipsa loquitur. The defendant contended that the explosion was attributable to some other cause as probable as the fact of its negligence, and sought to sustain the contention by evidence. The defendant submitted also direct evidence to show that it was not negligent. It will be seen from the above statement that if an inference of the defendant's negligence was legally authorized under the circumstantial evidence and was not conclusively rebutted by the direct testimony, the verdict should stand, but that if either

of these propositions should be decided in favor of the defendant, the verdict must be set aside.

In our view of the case it is unnecessary to discuss the evidence by which the plaintiff claims to have shown the defendant's negligence. At most it was only circumstantial and subject to rebuttal, and in our opinion, if a prima facie case was ever made out, it was rebutted as a matter of law. "When the plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful, when, by the positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed." *Frazier* v. *Ga. R. Co.,* 108 *Ga.* 807 (33 S. E. 993). "A fact can not be established by circumstantial evidence which is perfectly consistent with direct, uncontradicted, reasonable and unimpeached testimony that the fact does not exist." *Neill* v. *Hill,* 32 *Ga. App.* 381 (2 *b*) (123 S. E. 30). If the direct evidence established, without dispute, that the defendant was not negligent, the verdict in the plaintiff's favor is unlawful although the defendant has not satisfactorily accounted for the occurrence. *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (4) (47 S. E. 329). The defendant proved by Professor Peebles that soon after the explosion the wooden floors in both rooms were entirely removed, so that the pipes could be tested and examined in every part; that they were tested and were found to be everywhere free from defects, except inside three of the iron boxes described above, in the area of the explosion, "right in the center" of it. From all the testimony it appears that these defects did not exist before the explosion but were caused by it. It will not do to say that these three defects probably existed before the explosion. If the plaintiff ever excluded the theory of negligence on the part of the students or others than the defendant in allowing gas to escape through the pet-cocks in these boxes, he at the same time showed that there were no defects in the pipes or cocks within the boxes before the explosion. Under the situation and all the circumstances, the exclusion of one of these facts equally excluded the other. The plaintiff's conten-

tion was that the gas was confined between the floors somewhere outside the boxes, and that no gas was in the boxes. If none was ever in them before the explosion, then the defects found after the explosion can be explained upon no other theory than that they were caused by the explosion. See, in this connection, *Ga. R. Co.* v. *Roberts,* 114 *Ga.* 387 (40 S. E. 264) ; *Carroll* v. *Atlanta Paper Co.,* 7 *Ga. App.* 584 (67 S. E. 680) ; *Ga. Ry. &c. Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076).

The explosion occurred in March, 1921. The trial was in September, 1925. Immediately after the explosion and the tearing up of the old floors new floors were laid, and from that date until the trial the pipes had been constantly used without having been repaired, except at the three places mentioned, and nothing had occurred in the meantime to show that the tests and examinations, as made by Professor Peebles, were not thorough and exhaustive. The testimony of this witness was consistent with the circumstantial evidence, and, not being subject to discredit on any ground, was a complete refutation of any possible inference that might have been deducible from the circumstantial evidence. It follows that the verdict of the jury is illegal and that the court erred in refusing a new trial.

　　*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

ON MOTION FOR REHEARING.

We agree that the evidence set forth in the record shows, without dispute, that the explosion was brought about by gas collected between the floors. The only pipes alleged to have been defective were those between these floors. In relying upon the doctrine of res ipsa loquitur, the plaintiff undertakes to show that the gas did not accumulate between the floors by reason of a pet-cock having been left open, thus allowing the gas to escape from the box and thence into the space between the floors, with which space there was open communication. There seems to be no ground upon which to dispute the proposition that if the gas did escape from the pet-cock while the box was closed, it would permeate the space between the floors, the evidence being undisputed that there was open communication between the boxes and the floor spaces, the diameter of the pipes being four sixteenths of an inch less than that of the holes through which they entered the boxes. And, as previously stated, the evidence to the effect that, when the boxes

containing the petcocks were open, no odor of gas was detected, and that consequently the gas between the floors did not originate from a leaking pet-cock, does not afford any stronger proof that the boxes did not contain gas than that the floors did not contain gas, especially since the plaintiff himself testified that the gas was lighter than air, would go through a pin hole, and would expand and diffuse in all directions. And the plaintiff's case is based upon the contention that the floor space communicating with the boxes did contain gas. Since we know as a matter of fact that gas was concentrated between the floors, it must necessarily be true that the box containing the pet-cock likewise contained gas, and consequently the evidence offered as to the failure to detect any odor from the boxes could not afford proof against that proposition. The case was decided primarily upon the undisputed evidence that after the explosion the floors were taken up and the pipes alleged to have been defective were thoroughly tested and found not to be so. The only defect alleged being in the pipes between the floors, and their condition having been proven by plain and undisputed testimony to be without defect, the doctrine of res ipsa loquitur could not prove that to be the fact which the evidence demonstrates not to be the fact, especially since the evidence for the plaintiff seeking to disprove the other natural and reasonable theory by which the explosion might have been brought about does not appear to be compatible with what must have been the actual fact. On the other hand, the direct testimony introduced by the defendant, showing that the defendant was not negligent as alleged, is entirely consistent with the circumstantial evidence by which the plaintiff proved the accumulation of gas between the floors. The defendant's evidence does not deny this fact, but, in showing the absence of any defects in the pipes, would explain that the gas collected between the floors by escaping from an open petcock somewhere in a closed box, as to which the defendant was not negligent. We still think the rule is here applicable that where an inference is drawn solely from circumstances and is not demanded thereby, it may be overcome as a matter of law by the positive and uncontradicted testimony of an unimpeached witness, consistent with the circumstantial evidence relied on by the other party.

The rule was not applicable in *Haas* v. *Godby,* 33 *Ga. App.* 218

(125 S. E. 897), for reasons pointed out in the decision in that case,—reasons that do not obtain in the present case.

The principle just referred to could have no application, of course, where the direct testimony is not consistent with the circumstantial evidence. See *Atlantic &c. R. Co.* v. *Chute,* 3 *Ga. App.* 508 (60 S. E. 277). In such a case there is a conflict in the evidence, to be determined by the jury. It is our opinion that there was no inconsistency between the two classes of evidence in this case.

We realize fully that this court should never set aside a verdict on mere general grounds, where there is any evidence to sustain it, and if we have any "leaning" in a case involving such a question it is in favor of the verdict. We have most cautiously considered the motion for rehearing, and notwithstanding our great respect for the opinion and the good faith of the able counsel who have presented it, and our reluctance always to enter reversals in cases of this character, we can not do otherwise in this case than to hold that the verdict is unauthorized.

*Motion for rehearing denied. Jenkins, P. J., and Stephens, J., concur.*